Charlie Mack THOMAS, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 01–08–00902–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 30, 2010.

Rehearing Overruled Jan. 28, 2011.

Discretionary Review Refused
June 15, 2011.

---

Veronica L. Davis, West Columbia, for Appellant.

Joseph Kyle Verret, The Law Office of Kyle Verret, Houston, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

LAURA C. HIGLEY, Justice.

Appellant, Charlie Mack Thomas, Jr., was charged by indictment with the felony offense of driving while intoxicated.[1] Appellant pleaded not guilty to the charge and pleaded true to five enhancement paragraphs.[2] The jury found appellant guilty of the felony offense of driving while intoxicated and assessed punishment at 40 years' confinement. In fifteen points of error, appellant challenges (1) the trial court's denial of his motion to suppress; (2) the inclusion and exclusion of certain evidence during the guilt-innocence phase of the trial; (3) the sufficiency of the testimony of one of the witnesses involved in laying the predicate for the breath test results; (4) the exclusion of an argument about the application of the law in appellant's closing argument during the guilt-innocence phase of the trial; (5) the inclusion of certain provisions in the jury charge; and (6) the trial court's denial his motion for mistrial for jury misconduct. We affirm.

## Background

On the evening of March 15, 2007, Officer Michael Diaz—a police officer employed at the time by the city of Sweeny, Texas—had transported a prisoner to the jail in West Columbia and was en route back to Sweeny. While he was still in West Columbia, a car suddenly turned left in front of him forcing him to apply his brakes quickly in order to avoid colliding with the car. The driver—appellant, Charlie Mack Thomas, Jr.—did not use a signal prior to the turn. Appellant came to a complete stop with his car partially in the gas station lot he was entering and partially still in the street. One of the back-seat passengers opened his door for a few seconds. The door closed and appellant continued into the gas station lot.

Officer Diaz followed appellant onto the gas station lot. Appellant parked next to a gas pump, and Officer Diaz parked his car behind appellant's car. Officer Diaz approached appellant and began asking him questions. Officer Diaz smelled alcohol on appellant's breath.

Subsequently, Officer Cole, a police officer employed by West Columbia, Texas, and Officer Stallman, a Texas State Trooper, arrived on the scene. Officer Stallman performed a field sobriety test on appellant. He determined that the test indicated that appellant was intoxicated. He asked appellant whether he was willing to consent to a breath test. Officer Stallman asked appellant this repeatedly but could

---

1. *See* TEX. PEN.CODE ANN. § 49.04 (Vernon 2003). An offense under section 49.04 is a felony if it is shown on the trial of the offense that the person has two previous convictions for DWI. *Id.* § 49.09(b)(2) (Vernon Supp. 2010).

2. *See* TEX. PEN.CODE ANN. § 12.42 (Vernon Supp. 2010).

not get a clear answer. Once Officer Stallman informed appellant that he was going to take his refusal to answer as a refusal to consent to a breath test, appellant stated he would consent to the test.

Officer Stallman took appellant to the nearest police station with breath testing equipment and performed the test on appellant. The results showed that appellant was above the legal limit for alcohol concentration. Based on his previous charges of driving while intoxicated, appellant was charged with felony driving while intoxicated with five enhancement paragraphs for other convictions.[3]

### Motion to Suppress

In his first five points of error and in his eighth point of error, appellant challenges the trial court's denial of his motion to suppress evidence based on his claims that (1) the stop was impermissible because Officer Diaz was outside of his jurisdiction and there was not probable cause and (2) breath test results were coerced.

### A. Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.Crim. App.2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibili-

ty and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.*

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. When, as here, the trial court enters findings of fact after denying a motion to suppress, we must determine whether the evidence—viewed in the light most favorable to the trial court's decision—supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex.Crim.App.2006). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim.App.2007).

### B. *Terry* stop

In his first five points of error, appellant argues that the motion to suppress should have been granted because there was no probable cause for the stop and because the officer who witnessed appellant's driving was outside of his jurisdiction when he stopped appellant.

"An officer may conduct a brief investigative detention, or '*Terry* stop,' when he has a reasonable suspicion to believe that an individual is involved in criminal activity." *Balentine v. State*, 71

---

3. Tex. Pen.Code Ann. §§ 49.04, .09(b)(2).

S.W.3d 763, 768 (Tex.Crim.App.2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). For an officer to conduct a *Terry* stop, (1) the initial stop must be justified and (2) the scope of the investigation must be reasonably related to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine*, 71 S.W.3d at 768.

### 1. Officer Diaz's authority to conduct the *Terry* stop

■ Appellant argues that the investigating officer was outside of his jurisdiction and was not authorized to conduct an investigative detention and that the detention was not permissible under *Terry*. At the time of the incident, Officer Diaz was employed as a police officer by the city of Sweeny, Texas. The *Terry* stop occurred, however, in West Columbia, Texas. Appellant argues that this means he was not authorized to initiate the *Terry* stop.

Article 14.03(g)(2) of the Texas Code of Criminal Procedure provides:

> A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.

TEX.CODE CRIM. PROC. ANN. art. 14.03(g)(2) (Vernon Supp. 2010). Article 14.03 applies to *Terry* stops. *Brother v. State*, 166 S.W.3d 255, 260 (Tex.Crim.App.2005).

Officer Diaz testified he was a licensed police officer working for Sweeny, Texas. Accordingly, he was a police officer under Subdivision (3), article 2.12 of the Texas Code of Criminal Procedure and was licensed under chapter 1701 of the Texas Occupations Code.[4] TEX.CODE CRIM. PROC. ANN. art. 2.12(3) (Vernon Supp. 2010); TEX. OCC.CODE ANN. § 1701.301 (Vernon 2004). He further testified that both Sweeny and West Columbia are entirely within Brazoria County.

The only issue left, then, is whether the stop was based on violations of subtitle C, title 7 of the Texas Transportation Code. Officer Diaz testified that he was traveling southbound on the same road on which appellant was traveling northbound when appellant suddenly turned left, crossing in front of him. Appellant did not use his blinker. Appellant's abrupt turn forced Officer Diaz to quickly apply his brakes to avoid colliding into appellant. The car came to a complete stop when half of the car was still extending into the road. At that point, one of the back-seat passengers

---

4. Appellant argues that there was no testimony establishing that Sweeny, Texas was an incorporated city as required by article 2.12. We may take judicial notice that a city is incorporated and do take judicial notice that Sweeny, Texas is an incorporated city. *See Payan v. State*, 199 S.W.3d 380, 383 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd) (holding courts can take judicial notice of incorporated cities); *Texas State Library and Archives Commission*, http://www.tsl.state.tx. us/ref/abouttx/popcity12000.html (last visited September 30, 2010) (identifying Sweeny as an incorporated city).

opened his door, facing traffic, before closing it again.

Appellant's failure to use a turn signal when turning left provided a reasonable suspicion that he had violated section 545.104 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999). Appellant's failure to yield the right-of-way to a vehicle when he turned left provided a reasonable suspicion that he had violated section 545.152. *See* TEX. TRANSP. CODE ANN. § 545.152 (Vernon 1999). Appellant's abrupt turn in front of Officer Diaz that forced Officer Diaz to apply his brakes to avoid a collision provided a reasonable suspicion that he had violated section 545.401. *See* TEX. TRANSP. CODE ANN. § 545.401 (Vernon 1999). When the back-seat passenger opened his door, which was facing traffic, there was a reasonable suspicion that the passenger was violating section 545.418. *See* TEX. TRANSP. CODE ANN. § 545.418 (Vernon 1999). All of these statutes are within subtitle C, title 7 of the Texas Transportation Code.

Appellant argues that he presented witnesses in his motion to suppress that contradicted each of Officer Diaz's claimed violations that formed the bases for the *Terry* stop. It was the trial court's responsibility to resolve the conflicting evidence. *Wiede*, 214 S.W.3d at 24–25. Mere contradictions in the testimony do not establish error in the trial court's resolution of those conflicts.

Appellant argues that the Court of Criminal Appeals has held that a police officer does not have authority to make stops or arrests outside of his jurisdiction based on traffic violations. *See State v. Kurtz*, 152 S.W.3d 72, 79 (Tex.Crim.App. 2004). Subsection 14.03(g)(2) of the Texas Code of Criminal Procedure did not exist at the time that *Kurtz* was decided. *See* Act of May 25, 2005, 79th Leg., R.S., ch.

1015, § 1, 2005 Tex. Gen. Laws 3290, 3433. Accordingly, *Kurtz* has been superseded by the express language of the statute.

Appellant also argues that section 42.021 of the Texas Local Government Code limits the extraterritorial jurisdiction of a municipality and, accordingly, limited the jurisdiction of Officer Diaz. *See* TEX. LOC. GOV'T CODE ANN. § 42.021 (Vernon 2008) (limiting extraterritorial jurisdiction of a municipality to between half-mile to five miles, depending on size of city). The extraterritorial jurisdiction of a police officer of a municipality and of the municipality itself do not have to be coterminous. Section 42.021 of the Texas Local Government Code does not conflict with or in any way limit article 14.03 of the Texas Code of Criminal Procedure.

We hold that Officer Diaz had jurisdictional authority to initiate the *Terry* stop.

## 2. Basis for *Terry* stop

The same possible violations of the Texas Transportation Code that gave Officer Diaz extra-jurisdictional authority to conduct the *Terry* stop created the justification for conducting the *Terry* stop. Appellant argues that there was no justification for the *Terry* stop because he was not the one to open the back-seat door. There is no requirement that justification for the *Terry* stop be caused by the driver of the vehicle or even the person ultimately charged with a crime. *See, e.g., Strickland v. State*, 923 S.W.2d 617, 620 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (holding passenger could be detained and patted-down after driver failed to use blinker in making a turn). Furthermore, there were multiple other possible violations of the law that were caused by him that also provided Officer Diaz justification for initiating a *Terry* stop.

Under the second prong of *Terry*, the scope of the investigation must be

reasonably related to the circumstances that justified the interference in the first place. *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. Once he approached appellant during the *Terry* stop, Officer Diaz smelled alcohol on appellant's breath and suspected he was drunk. "During an investigation of a traffic violation, if an officer develops [a] reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense." *Goudeau v. State,* 209 S.W.3d 713, 719 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Accordingly, at that point, Officer Diaz's investigative detention expanded to include driving while intoxicated.

We hold the constitutional requirements to conduct a *Terry* stop were satisfied.[5]

### 3. Officer Diaz's licensing as a police officer

In his motion for new trial, appellant argued that Officer Diaz was not licensed as a police officer when he conducted the investigative detention. Appellant's basis for this argument was a document he presented showing that Officer Diaz did not complete the minimum course training required by August 31, 2007. The incident in question occurred in March 2007. Even if Officer Diaz did not complete his course training, his deadline to do so was after the date of the incident. Appellant has not presented any evidence establishing that Officer Diaz's license could have been revoked prior to the deadline to complete his course training.

We overrule appellant's first, second, third, fourth, and fifth points of error.

### C. Breath test results

■ In his eighth point of error, appellant argues that he was coerced into taking

the breath test and, as a result, the trial court should have excluded the results of the test.

The only testimony regarding the voluntariness of appellant's breath test came from Officer Stallman. Officer Stallman stated that not all of the police stations in Brazoria County had breath test equipment. The closest station did not have one. Officer Stallman asked appellant whether he would consent to a breath test in order to determine where he would take appellant. According to Officer Stallman, appellant repeatedly gave nonresponsive answers to this question. Ultimately, Officer Stallman told appellant he was going to take his refusal to answer as a refusal to take a breath test. Appellant then said he would consent to a breath test. Officer Stallman took appellant to a station with breath test equipment, and appellant took the test.

Section 724.011 of the Transportation Code provides that a person arrested for suspected driving while intoxicated is deemed to have consented to the taking of samples for a breath or blood test. *See* TEX. TRANSP. CODE ANN. § 724.011(a) (Vernon 1999). Nevertheless, a suspect's consent to a breath test must be voluntary. *Gette v. State,* 209 S.W.3d 139, 145 (Tex. App.-Houston [1st Dist.] 2006, no pet.). For consent to a breath test to be deemed "voluntary," a suspect's decision must not be the result of physical pressure or psychological pressure brought to bear by law enforcement officials. *See Thomas v. State,* 723 S.W.2d 696, 704–05 (Tex.Crim. App.1986) (noting that consent to breath induced by physical force or mental coercion is involuntary).

---

**5.** Appellant argues that the stop was not justified based on article 14.03(a) of the Texas Code of Criminal Procedure. We do not need

to address this argument as we have already determined that the stop was justified based on article 14.03(g)(2).

The only evidence that even suggested that appellant's breath test was coerced were the statements by Officer Stallman that he could not get a direct response from appellant regarding whether he would consent to a breath test and that he told appellant he was going to take his refusal to answer as a refusal to consent. We hold that this statement does not rise to the level of "psychological pressure brought to bear by law enforcement officials."

We overrule appellant's eighth point of error.

### Evidentiary Challenges

In his seventh, ninth, twelfth, and fourteenth points of error, appellant argues that the trial court erred in (1) excluding appellant's exhibit regarding Officer Stallman's notes for the field sobriety test; (2) admitting the field sobriety video; and (3) admitting the results of appellant's breath test.[6]

### A. Standard of review

■ A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *See Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App.2003). An abuse of discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State,* 101 S.W.3d 600, 604 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). We will affirm the trial court's ruling if it lies within the zone of reasonable disagreement. *See Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002).

**6.** In his fourteenth point of error, appellant also argues that Leigh Ann Speno, one of the State's witnesses testifying about the breath test results, was not qualified to testify as an expert and that the trial court erred by allowing Speno's testimony without confirmation of her calibration reports. Appellant did not

### B. Officer Stallman's notes

■ Officer Stallman had a set of documents with him while he was testifying about the field sobriety test he administered to appellant. One of the documents in Officer Stallman's possession was the standardized field sobriety test scoring sheet. When appellant attempted to ask Officer Stallman questions based on the document, the State objected to hearsay and the trial court sustained the objection. Appellant argues that he should have been allowed to have the document admitted and discussed based on Rule 612 of the Texas Rules of Evidence.

Under Rule 612 of the Texas Rules of Evidence, if a witness uses a writing to refresh his memory while testifying, the adverse party is entitled to have the writing produced and to introduce into evidence those portions which relate to the testimony of the witness. Tex.R. Evid. 612. Officer Stallman testified that, although the document was in his possession while testifying, he did not use it to refresh his testimony. Because Officer Stallman did not use the document to refresh his memory while testifying, Rule 612 did not apply to it. We hold appellant has not shown that the trial court abused its discretion in refusing to admit the document under Rule 612.

### C. Field sobriety test video

The field sobriety video was redacted by agreement of appellant and the State. Appellant initially raised an objection regarding whether Officer Stallman knew it was

raise an objection to either of these issues at trial. Any error that may have existed has been waived. *See* Tex.R.App. P. 33.1(a); *Mendez v. State,* 138 S.W.3d 334, 341–42 (Tex. Crim.App.2004) (requiring record show timely, specific objection and ruling by trial court to preserve complaint for appellate review).

a true and correct copy but later withdrew the objection. During Officer Stallman's cross-examination, appellant played the video multiple times.

Appellant now complains that the video contains impermissible narration by Officer Tillman. Any objections to the contents of the video were waived when appellant failed to raise an appropriate objection when the State sought its admission. *See* TEX.R.APP. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341–42 (Tex.Crim.App.2004) (requiring record show timely, specific objection and ruling by trial court to preserve complaint for appellate review). We hold appellant's objections regarding the admission of the field sobriety test video have been waived.

In a separate point of error, appellant argues that the trial court erred in admitting the field sobriety tests because Officer Stallman did not establish the reliability of the tests. No such objection was ever made at trial. Accordingly, any error has been waived. *Id.*

We overrule appellant's seventh and twelfth points of error.

### D. Breath test results

Appellant argues that the breath test results were admitted through the wrong witness. Two people testified about the breath test: Officer Stallman and Leigh Ann Speno. Officer Stallman testified about the actions he took in conducting the breath test as well as the results of the test. Speno is a forensic scientist employed by the Texas Department of Public Safety in their forensic alcohol breath laboratory. She maintains the breath testing program in five counties, including Brazoria County. Speno testified that the breath test equipment was operating properly at the time the test was conducted and stated the results of the test.

Near the end of the State's examination of Speno, the State sought to have the test results admitted into evidence. Appellant argued that the test could not be admitted through Speno and that they could only be admitted through Officer Stallman.

To establish a proper predicate to admit the results of an accused's breath test in evidence, the State is required to show: (1) the machine functioned properly on the day of the test as evidenced by the running of a reference sample through the machine, (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine, and (3) proof of the results of the test by a witness qualified to translate and interpret such results. *Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex. Crim.App.1986). It is not necessary for the operator to understand the scientific theory of the machine. *Reynolds v. State*, 204 S.W.3d 386, 389 (Tex.Crim.App.2006). Because it is not necessary for the operator to understand the scientific theory of the machine but it is necessary to show periodic supervision over the machine by one who understands the scientific theory of the machine, the clear implication is that two witnesses are commonly necessary to lay the proper predicate for admission of the breath test results. We hold that once the proper predicate has been established, the evidence can come in through any witness involved in establishing the predicate.

Appellant also complains that Speno's testimony established that, in preparation for her testimony, she had not looked through the records to determine the number of times that the equipment in question had been repaired and that the equipment was outside of its warranty. A witness's familiarity with whether the equipment is outside of its warranty may serve to impeach the witness's opinion that the machine was in working order, but it

goes to the weight of the testimony not its admissibility if an adequate predicate has otherwise been laid. Here, Speno testified that the breath test equipment was operating properly at the time the test was conducted and stated the results of the test. Accordingly, the lack of the testimony about warranties and repair work does not require exclusion of the breath test results.

Appellant next argues that Speno's testimony established that the results of a breath test could be affected by (1) paint fumes; (2) someone wearing a lot of cologne; (3) the testee having a fever of 101.6°F or higher; and (4) a very hot room temperature. These are only hypothetical factors that could potentially affect the breath test results. There is no evidence in the record that any of these factors were actually present for appellant. This again goes to the weight of the evidence and not its admissibility.

Furthermore, the testimony at trial established that during the testing process, the equipment performs a test of the ambient air. If paint fumes or strong cologne had been present during appellant's test, the equipment would have detected it and invalidated the test. The equipment did not detect any fumes or cologne.

The testimony also established that, if appellant had had a fever of 101.6°F, then that would have resulted in the test results increasing by 0.003. Appellant's lowest test showed appellant had an alcohol concentration of 0.165. Assuming appellant had a fever of 101.6 °F, his test results would actually have been, 0.162. This is still well above the amount permissible by law. TEX. PEN.CODE ANN. §§ 49.01(2)(B), 49.04(a) (Vernon 2003).

Finally, the testimony established that, if the room temperature were excessively hot, the equipment would not function. Because the equipment did function, the jury could properly infer that the room

was not excessively hot. We hold there was a sufficient predicate for admission of the breath test.

We overrule appellant's ninth and fourteenth points of error.

### Closing Argument

In his sixth point of error, appellant argues that the trial court abused its discretion in not allowing his counsel to discuss the applicability of article 14.01 of the Texas Code of Criminal Procedure during his closing argument.

### A. Standard of review

▆▆▆▆ A criminal defendant is allowed to argue any defensive theory supported by the evidence admitted at trial. *Arnold v. State,* 68 S.W.3d 93, 102 (Tex. App.-Dallas 2001, pet. ref'd). Argument that misstates the law or is contrary to the court's charge is improper. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App. 1990); *Sholars v. State,* 312 S.W.3d 694, 702 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd). We review the trial court's application of the law de novo. *Wiede,* 214 S.W.3d at 25.

### B. Analysis

During appellant's closing argument, the following exchange occurred:

Defense: The charge in this case, it says that an officer may arrest without a warrant a person who commits an offense which [occurs] in the Officer's presence or view. It didn't happen here. [Officer Stallman] didn't see a thing.... So if you didn't see him driving the vehicle he was alleged to be in, you cannot say beyond a reasonable doubt that he was operating a motor vehicle.

State: Objection. The question of reasonable suspicion goes to Officer

Diaz's stop and not to Officer Stallman's arrest.

Trial Court: Sustained.

State: Ask the jury to disregard.

Trial Court: The jury will be instructed to disregard the last statement of [defense counsel] as an incorrect statement of the law....

Appellant relies on article 14.01 of the Texas Code of Criminal Procedure to support his claim that this argument was correct. This article, however, was not a part of the charge. Appellant's counsel's argument that it was, in fact, part of the charge was incorrect and improper. *Sholars*, 312 S.W.3d at 702.

We overrule appellant's sixth point of error.

## Jury Charge

In his tenth and eleventh points of error, appellant argues that the trial court erred by limiting its instruction regarding warrantless searches to Officer Diaz only and by including provisions from the Texas Transportation Code in the charge.

### A. Standard of Review

■ In reviewing a claim of jury charge error, the first step is to determine whether there is error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim.App.2009). If there was error and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean there must be "some harm." *Id.* If error exists, but was not objected to, reversal is not required unless the error is so egregious that the defendant was denied a fair and impartial trial. *Id.*

### B. Scope of instructions regarding warrantless searches

Appellant argues that the charge limits its instructions regarding warrantless searches to Officer Diaz only. Appellant, however, cites to a portion of the record that has nothing to do with the charge. The portion of the charge relating to warrantless searches states the following:

You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts, which, taken together with rational inferences from those facts, leads him to believe that a person detained actually is, has been, or soon will be engaged in criminal activity.

The jury's charge does not contain the limitation that appellant claims to be an error. Accordingly, there is nothing for us to review.

Appellant also argues that the trial court failed to allow an instruction for the jury to consider whether Officer Stallman personally witnessed the offense as appellant argues article 14.01 of the Texas Code of Criminal Procedure requires. Appellant never made a request for such an instruction to be in the charge. Moreover, the State never relied on 14.01 as authority for arresting appellant. Instead, the State relied on article 14.03(a)(1) as authority for arresting appellant. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(1). The trial court was not required to include instructions on law that was not applicable.

We overrule appellant's tenth point of error.

## C. Inclusion of provisions of the Texas Transportation Code

Appellant argues that the trial court erred by including provisions from subtitle C, title 7 of the Texas Transportation Code in the charge. Appellant raised a timely objection to the inclusion of these provisions. As we have already stated, the State relied on article 14.03(g)(2) of the Texas Code of Criminal Procedure to establish that Officer Diaz's *Terry* stop was authorized. Article 14.03(g)(2) authorizes an officer outside of the jurisdiction of his municipality to conduct a *Terry* stop based on a reasonable suspicion that any portions of subtitle C, title 7 of the Texas Transportation Code have been violated only if the suspected violations occurred within the same county that the municipality is located. TEX.CODE CRIM. PROC. ANN. art. 14.03(g)(2). For the jury to determine whether the Terry stop was proper, then, the jury had to first determine whether Officer Diaz could have reasonably suspected that the applicable violations actually occurred. Accordingly, it was necessary for the charge to identify the portions of subtitle C, title 7 of the Texas Transportation Code that Officer Diaz could have relied on to form his reasonable suspicion. All of the provisions of the Texas Transportation Code identified in the charge are within subtitle C, title 7 of the Texas Transportation Code and, accordingly, were properly included in the charge.

■ Appellant challenges the factual bases for each of these statutes. If Officer Diaz could have reasonably believed that one of the statutes was being violated, there is no error. *Cf. Marinos v. State*, 186 S.W.3d 167, 175 (Tex.App.-Austin 2006) (holding when alternative grounds for committing an offense are submitted to the jury, conviction is appropriate if evidence supports one). Section 545.401 provides, "A person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." TEX. TRANSP. CODE ANN. § 545.401. Officer Diaz testified that appellant turned suddenly in front of him, forcing Officer Diaz to apply his brakes quickly in order to avoid colliding into appellant's vehicle. We hold that there was sufficient evidence for the jury to have determined that Officer Diaz could have reasonably suspected that section 545.401 had been violated.

We overrule appellant's eleventh point of error.

## Motion for Mistrial

In his fifteenth point of error, appellant argues that the trial court erred in denying his mistrial due to juror misconduct.

### A. Standard of Review

■ "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex.Crim.App.2009). We review the denial of a motion for mistrial under an abuse of discretion standard. *Id.* "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the trial court at the time of the ruling." *Id.* An appellant has the burden of proving an allegation of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex.Crim.App.2000).

### B. Analysis

■ At the time of the trial court's ruling, there was no evidence in the record that there was any juror misconduct. *See Ocon*, 284 S.W.3d at 884 (holding evidence of misconduct must be before trial court at time of ruling). Instead, there was only the motion by appellant's attorney, "I would like to make a motion on the record

regarding the information that [counsel for the State] gave us, speaking to the officer as being improper jury conduct." Appellant did not make any further attempt to get the relevant information into the record. The trial court denied the motion.

The next day the trial court raised the issue with the jury. It was revealed that one of the jurors had seen Officer Stallman in the afternoon of one of the days when Officer Stallman had testified in the morning. The juror asked Officer Stallman if he was required to be there or if he had chosen to stay. There is no evidence in the record that Officer Stallman responded. Five other jurors heard this exchange. All of the jurors, even those who did not hear it, stated that the exchange did not influence them in any way during their deliberations. Appellant did not seek to ask any questions or renew his motion.

Article 36.22 of the Code of Criminal Procedure provides, in relevant part, that "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the trial court." TEX.CODE.CRIM. PROC. ANN. art. 36.22 (Vernon 2006). Because the exchange in question did not relate to the case, the trial court did not abuse its discretion in denying the motion for mistrial. *Iness v. State,* 606 S.W.2d 306, 315 (Tex. Crim.App.1980).

We overrule appellant's fifteenth point of error.

### Appellant's Thirteenth Point of Error

In his thirteenth point of error, appellant argues, "The trial court erred in its determinations regarding the charge, as well as the omission and admitting of evidence which resulted in the jury's rendi-

tion of improper verdict resulting in legal and factual insufficiency to support the verdict." Appellant dedicates slightly more than two pages to this argument. These two pages consist primarily of lengthy block quotes of two court opinions and of a list of fact issues appellant believes he raised. The block quotes concern (1) the evidentiary requirements before a question concerning the lawfulness of obtaining certain evidence can be submitted to the jury and (2) the standard of review for factual-sufficiency challenges.[7] *See Manley v. State,* No. 07–08–0116–CR, 2009 WL 1393293, at *3 (Tex.App.-Amarillo May 19, 2009, no pet.) (memo. op., not designated for publication); *Baker v. State,* 177 S.W.3d 113, 117 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The list of fact issues are not supported by any citations to the record. Appellant otherwise only makes general references to the Texas Code of Criminal Procedure, the United States Constitution, and the Texas Constitution and states without support that a thirty-minute deliberation time by the jury was "an insufficient time to weigh any of the facts or law presented in this case." He ends the point of error by stating, "The trial court committed reversible error because the legal and factual sufficiency were lacking to support the verdict."

An appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(i). If an argument is not adequately briefed, there is nothing for the appellate court to review. *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005). We hold that appellant has not presented any-

---

7. Appellant never asked for a question concerning the lawfulness of obtaining certain evidence to be submitted to the jury.

thing for review in his thirteenth point of error.

We overrule appellant's thirteenth point of error.

### Conclusion

We affirm the judgment of the trial court.