

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00249-CR

**EGNACIO PORFELIO MATA,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2011-2228-C1

## MEMORANDUM OPINION

In four issues, appellant, Egnacio Porfelio Mata, challenges his conviction for failing to register as a sex offender, a first-degree felony. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a), (c) (West 2006). We affirm.

### I.    BACKGROUND

Agent Mark Gerik of the Texas Department of Public Safety, Criminal Investigations Division, and the United States Marshals testified that, on July 5, 2011, he

learned that appellant was wanted on a federal probation violation.[1]  Agent Gerik noted that law enforcement officers attempted to apprehend appellant at the address appellant registered as his residence—2210 Cumberland in Waco, Texas.   Officers realized that appellant no longer lived at 2210 Cumberland when appellant's sister stated that she had fought with appellant and kicked him out of the house approximately three or four weeks earlier.

Agent Gerik did not know where appellant resided until he received information that appellant now lived at 2210 Lasker in Waco.  Upon arriving at 2210 Lasker, Agent Gerik knocked on the door, and Dianna Sue Mata answered.  Dianna acknowledged that Nacho, which is appellant's alias, "was in the back."  As officers entered the house, they encountered Anthony Mata, who was asleep on the floor.  Anthony directed officers to the rear of the house where they found appellant hiding behind a mattress that was standing against the wall.  Appellant was subsequently arrested, and in the course of the arrest, officers discovered small quantities of methamphetamine, cocaine, and marihuana nearby.

Appellant was taken to the McLennan County jail.  During booking, appellant had a conversation with Agent Gerik, who recounted the following:

> Sure.  As the course of our regular arrest procedures, we fill out what the jail calls a Form 6, which we document all of the defendant's personal information, you know, name, date of birth, address, any charges against him. Those all go on that form.  When I was filling out that form, I asked Mr. Mata what his address was.  He told me it was 2210 Cumberland, and based on the information that I already knew about him

---

[1] United States Probation Officer Darren Porter testified that the warrant issued because appellant tested positive on some drug tests and violated other conditions of his probation.

having been kicked out of that residence and being found over on Lasker, I asked him, I said, you know, "Is that where you're living, or is that where you're staying?" He advised me that he had not stayed at the 2210 Cumberland address for approximately two weeks.[2]

At the time of booking, Agent Gerik knew that appellant was a sex offender, but, according to Agent Gerik, appellant was not being investigated for failure to register as a sex offender at that point. Agent Gerik also emphasized that the question about appellant's address involved standard book-in procedures that were always asked of inmates.

Robert Mata, appellant's brother, explained that appellant had not been kicked out of Dianna's house weeks ago and that Dianna was a "drama queen." Robert testified that he had picked up appellant several times from Dianna's house on Cumberland in the weeks preceding appellant's arrest. Robert also testified that appellant was not living at his house on Lasker; instead, appellant was simply visiting. Nevertheless, Betty Wilson of the Special Crimes Unit of the Waco Police Department, noted that it was her responsibility to register all sex offenders within the Waco city limits and that appellant never provided her with a secondary or change of address other than the Cumberland address.

At the close of the evidence, the jury found appellant guilty of failing to register as a sex offender. In addition, the jury concluded that all of the enhancement

---

[2] At the suppression hearing, Agent Gerik testified that appellant never provided him with an additional address. "He [appellant] had just simply told me that he had not stayed on Cumberland for two weeks." However, Agent Gerik stated at trial that appellant disclosed his address as being 2210 Lasker. Nevertheless, the trial court denied appellant's motion to suppress the statements he made to Agent Gerik regarding his address. On appeal, appellant does not explicitly challenge the trial court's denial of his motion to suppress.

paragraphs contained in the indictment were true and assessed punishment at sixty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $2,500 fine. This appeal followed.

## II. THE BOOKING-QUESTION EXCEPTION

In his first three issues, appellant contends that the trial court erred in admitting the oral statements he made to Agent Gerik regarding his address because the statements were made pursuant to a custodial interrogation in violation of article 38.22 of the Texas Code of Criminal Procedure and his privilege against self-incrimination under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution. Appellant also argues that Agent Gerik's questions regarding appellant's address were designed to elicit an incriminating admission; thus, the booking-question exception to *Miranda* does not apply. We disagree.

### A. Standard of Review

In reviewing a *Miranda*-violation claim, an appellate court conducts a bifurcated review: (1) it affords almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor; and (2) it reviews de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652-53 (Tex. Crim. App. 2012) (citing *Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

The decision as to whether custodial questioning constitutes "interrogation" within the context of *Miranda* is a mixed question of law and fact; therefore, we defer to

the trial court's fact findings that turn on an evaluation of credibility and demeanor. *Id.* (citing *Ripkowski*, 61 S.W.3d at 381-82). However, if credibility and demeanor are not necessary to the resolution of the issues, whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment of the United States Constitution is subject to de novo review because that is an issue of law—it requires the application of legal principles to a specific set of facts. *Id.*

**B.** **Discussion**

Here, appellant asserts that Agent Gerik's questions about his address were designed to elicit an incriminating response. On the other hand, the State argues that Agent Gerik's questions about appellant's address were reasonably related to a legitimate administrative concern.

In determining whether a question asked during a jail book-in procedure elicited an answer that will be admissible at trial, a trial court must decide whether, under the totality of the circumstances, the question is reasonably related to a legitimate administrative concern. *Id.* at 661. We review de novo the objective reasonableness of a question's stated administrative purpose but defer to the trial court's resolution of disputed facts. *See id.*

At the outset, we note that an inquiry about appellant's address is reasonably related to the jail's legitimate administrative concern for keeping accurate records on inmates. *See* 37 TEX. ADMIN. CODE § 265.4(a)(5) (2006) ("Upon intake, a file on each inmate shall be established. The file shall include . . . address . . . ."); *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 2650, 110 L. Ed. 2d 528 (1990); *Alford*, 358

S.W.3d at 661; *see also Hollins v. State*, No. 05-12-00835-CR, 2013 Tex. App. LEXIS 5038, at

**11-12 (Tex. App.—Dallas Apr. 23, 2013, no pet. h.) (not designated for publication).

In his testimony, Agent Gerik noted that appellant's address was necessary to the

completion of the Form 6, which is filled out in the course of booking inmates.  There is

no evidence in the record demonstrating that Agent Gerik's follow-up question

regarding appellant's address was designed to elicit an incriminating response.  *See*

*Alford*, 358 S.W.3d at 659 n.25 (citing *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir.

1989) (finding no error where questions were not "intended . . . to elicit a confession or

incriminating information.  The police meant only to gather ordinary information for

administrative purposes"); *Nicholas v. Goord*, 430 F.3d 652, 680 (2d Cir. 2005) (Lynch, J.,

concurring) ("[Q]uestions aimed at eliciting identifying or 'pedigree' information [are]

permitted without warnings, even though the answers to such questions may become

evidence either of the particular crime for which the suspect was arrested, or of some

past or future crime not yet under investigation.")); *but see Timbers v. Commonwealth*, 28

Va. App. 187, 503 S.E.2d 233, 238 (Va. App. 1998).[3]  In fact, at the time of the

---

[3] In *Timbers v. Commonwealth*, appellant was under arrest when she was asked for identifying information, including her name, date of birth, and Social Security number, at the sheriff's office.  28 Va. App. 187, 503 S.E.2d 233, 235 (Va. App. 1998).  Appellant told police that her name was Gwendolyn Ann Timbers.  *Id.*  Appellant was fingerprinted and placed in a holding cell.  *Id.*  On the fingerprint card, appellant signed her name as "Gwendy Timbers."  *Id.*  Between a half-hour and an hour after appellant's booking, "a woman came into the lobby of the sheriff's office and asked to give [Deputy Robert] MacFall an item of clothing for Kelly Timbers."  *Id.*  After this exchange, Deputy MacFall immediately went to appellant's holding cell and questioned her about her real identity.  *Id.*  Deputy MacFall did not read appellant her *Miranda* rights, and as a result of the questioning, appellant acknowledged that she was actually Kelly Timbers.  *Id.*  Appellant was subsequently charged with two counts of forgery.  *Id.*

The Virginia Court of Appeals concluded that "MacFall's interrogation of appellant does not fall within the [booking] exception.  Most importantly, MacFall did not confront appellant in the holding cell to clarify an ambiguity in her statements made during booking; rather, he sought to investigate what he believed to be false information."  *Id.* at 238.  The Court also noted that "MacFall's statement that if

questioning, appellant was under arrest for unlawful possession of controlled substances. Furthermore, Kimberly Lee, a book-in bonding clerk with the McLennan County Sheriff's Office, indicated that, during the book-in process, she usually asks inmates: "To state their full name, date of birth, address, height, weight, phone number, social, if they work, tattoos, emergency contact, if they have any diseases or homicidal tendencies, gang affiliation." Lee's testimony demonstrates that an inmate's address is but one of several pieces of information necessary to book an inmate. In addition, Wilson stated that appellant, as a convicted sex offender, had a duty to notify authorities of where he was staying at all times, which appellant did not do.

Based on a de novo review of the record, we find that the totality of the circumstances objectively show that Agent Gerik's questions about appellant's address were reasonably related to a legitimate administrative concern—accurately assessing appellant's address for record keeping. *See* 37 TEX. ADMIN. CODE § 265.4(a)(5); *Muniz*, 496 U.S. at 601, 110 S. Ct. at 2650; *Alford*, 358 S.W.3d at 661-62; *see also Hollins*, 2013 Tex. App. LEXIS 5038, at **11-12. As such, we conclude that the trial court did not err in admitting appellant's statements under the booking-question exception to *Miranda*. *See* 37 TEX. ADMIN. CODE § 265.4(a)(5); *Muniz*, 496 U.S. at 601, 110 S. Ct. at 2650; *Alford*, 358

---

appellant had given a false name, she needed to come forward with that information, can hardly be considered a routine booking question." *Id.*

In the instant case, Agent Gerik sought to clarify information regarding appellant's address, and he did so during the booking process, not after. Nevertheless, appellant seems to suggest that Agent Gerik was not authorized to ask a follow-up question once appellant provided the Cumberland address. However, accurate information regarding inmates is necessary to the effective functioning of the jail. And we believe that, under these circumstances, the jail's need for accurate information regarding inmates should not be obfuscated by a misleading statement made by an inmate.

S.W.3d at 661-62; *see also Hollins*, 2013 Tex. App. LEXIS 5038, at **11-12. Accordingly, we overrule appellant's first three issues on appeal.

### III. TEXAS RULE OF EVIDENCE 612

In his fourth issue, appellant asserts that the trial court erred in denying his request to review the contents of the file of the Waco Police Department sex-offender registrar. Appellant contends that the denial of this request violated Texas Rule of Evidence 612. *See* TEX. R. EVID. 612. The State counters that appellant did not establish the prerequisites of rule 612. *See id.*

"A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under Texas Rule of Evidence 612, an adverse party is entitled to have a writing produced if a witness uses the writing to refresh the witness's memory before testifying in a criminal case. TEX. R. EVID. 612.

Appellant is only entitled to Wilson's entire file if it was actually used by Wilson to refresh her memory. *See id.*; *Pondexter v. State*, 942 S.W.2d 577, 582 (Tex. Crim. App. 1996); *McFatridge v. State*, No. 10-08-00049-CR, 2011 Tex. App. LEXIS 2620, at *10 (Tex. App.—Waco Apr. 6, 2011, pet. ref'd) (mem. op., not designated for publication). No one asked Wilson if or when she used the entire file in order to refresh her memory.[4] Since

---

[4] We recognize that the record reflects the following exchange:

Q [Defense counsel]:    Well, you don't recall—did you review the file before you came here today?

there is no evidence from the record to establish that Wilson did in fact use the entire file to refresh her memory during or before her testimony, the trial court did not err in refusing to admit the file. *See Saldivar v. State*, 980 S.W.2d 475, 497 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *see also McFatridge*, 2011 Tex. App. LEXIS 2620, at **10-11 (citing *Thomas v. State*, 336 S.W.3d 703, 711 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Love v. State*, No. 01-08-00941-CR, 2009 Tex. App. LEXIS 8952, at **19-20 (Tex. App.—Houston [1st Dist.] Nov. 19, 2009, no pet.) (mem. op., not designated for publication)). We therefore overrule appellant's fourth issue.

## IV.  CONCLUSION

Having overruled all four of appellant's issues, we affirm the judgment of the trial court.

---

A [Wilson]:        Yes, I did.

However, defense counsel never established when the file was reviewed, nor did he establish what parts of the file had been reviewed by Wilson to refresh her memory in preparation for trial. *See Saldivar v. State*, 980 S.W.2d 475, 497 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *see also Love v. State*, No. 01-08-00941-CR, 2009 Tex. App. LEXIS 8952, at **18-20 (Tex. App.—Houston [1st Dist.] Nov. 19, 2009, no pet.) (mem. op., not designated for publication) ("Here, although Odhiambo said that she reviewed a document prior to trial, there is no evidence of specifically when she reviewed it or whether she used it to refresh her memory. . . . However, defense counsel did not inquire about the nature of the document or whether Odhiambo had used it to refresh her memory or relied on it for her opinions. Reliance on the material to refresh recollection or to form a basis for the witnesses' opinions is a prerequisite to disclosure of such materials. . . . Thus, we hold that the trial court did not abuse its discretion in denying defense counsel's request for the document or in failing to require the State to produce the document for in camera inspection."). Furthermore, upon questioning by defense counsel, Wilson did not recall much of the information requested, which suggests that Wilson did not use the entire file to refresh her memory before testifying.

AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed June 6, 2013
Do not publish
[CRPM]