

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00315-CR

Paulino **FLORES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR1058
Honorable George H. Godwin, Judge Presiding[1]

Opinion by: Jason Pulliam, Justice

Sitting: Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed: April 1, 2015

AFFIRMED

Paulino Flores was convicted by a jury of felony murder. On appeal, Flores contends: (1) the trial court erred in overruling an objection to a misstatement of the law made by the prosecutor during closing argument; and (2) the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

---

[1] Sitting by assignment.

**BACKGROUND**

Pedro Hernandez was given permission to keep his horses on a tract of land and went to the land to water the horses and clear some brush. Reynaldo Flores-Leyja and Arnulfo Gonzalez accompanied Hernandez to the land. As the three men were walking towards a creek, Flores began shooting at them from a brushy area with an AK-47 semi-automatic rifle. Flores-Leyja and Gonzalez described the shooting as a spraying type shooting and that Flores made a sweeping motion with the AK-47 as he was shooting. Flores-Leyja testified that the bullets were hitting the dirt in front of the three men.

Hernandez was struck by a bullet in the knee. When Gonzalez went to assist Hernandez and tried to use his cell phone to call for help, Flores grabbed the cell phone and threw it toward the creek. Hernandez died before help could be summoned. The medical examiner testified that Hernandez bled to death as a result of the gunshot wound.

**CLOSING STATEMENT**

In his first issue, Flores contends the trial court erred in overruling his attorney's objection to a misstatement of the law made by the prosecutor during closing argument. The State responds that the prosecutor did not misstate the law.

Jury argument that misstates the law or is contrary to the court's charge is improper. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Thomas v. State*, 336 S.W.3d 703, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In the portion of the closing argument to which Flores's attorney objected, the prosecutor stated:

> Now, the defendant wants you to believe that he never shot at Pedro or even in his direction. Well, deadly conduct isn't just proving that he shot in the direction of Pedro, it can be of any of the three guys that were there. It's any individual. Okay? So deadly conduct arises if he shot at or in the direction of Reynaldo or Arnulfo.

Flores's attorney objected, asserting, "Judge, that is not what is in the indictment. They have specifically alleged in the indictment that he was shooting at Pedro Hernandez and that is not — they could have alleged Arnulfo and Reynaldo but they did not so I think this is improper." The trial court overruled the objection.

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals. TEX. PENAL CODE ANN. § 22.05(b)(1) (West 2011). A person commits the offense of felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. *Id*. at § 19.02(b)(3). The count in the indictment on which Flores was tried stated:

> on or about the 26th Day of September, 2010, PAULINO FLORES, hereinafter referred to as defendant, did then and there intentionally or knowingly commit or attempt to commit the felony offense of DEADLY CONDUCT, and while in the course of or in furtherance of or in immediate flight from the commission or attempted commission of this offense, the defendant did then and there commit or attempt to commit an act clearly dangerous to human life, to-wit: DISCHARGING A DEADLY WEAPON, NAMELY, A FIREARM, AT AND IN THE DIRECTION OF PEDRO HERNANDEZ, thereby causing the death [of] PEDRO HERNANDEZ

Flores's argument is based on the contention that "discharging a deadly weapon, namely, a firearm, at and in the direction of Pedro Hernandez" describes the deadly conduct offense. However, we agree with the State that the phrase actually describes the "act clearly dangerous to human life" element of the felony murder offense. Our interpretation of the phrase is consistent with the jury charge which stated, "Our law provides that a person commits the felony offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals." No objection was made to this portion of the charge. Accordingly, because the

prosecutor's argument was consistent with the law and paraphrased the jury charge, the trial court did not err in overruling Flores's objection.  *See Whiting*, 797 S.W.2d at 48 (stating "[i]t is not error for the State to quote or paraphrase the jury charge").

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Flores contends the evidence is insufficient to support his conviction because "[t]he only testimony presented from the three gentlemen who were present indicates that the shots were fired at the ground and either in front of or to the side of Pedro.  There was no evidence presented that Appellant knowingly shot at or in the direction of Pedro."

In evaluating the legal sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony.  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (emphasis in original).

In his brief, Flores notes that the phrase "at or in the direction of" an individual is not defined in the Texas Penal Code and cites the following definitions from the Tyler court's opinion in *Essary v. State*:

> . . . .  To discharge a firearm "at" a person is to shoot the weapon toward that person's location.  *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 77 (11th ed. 2011) (defining "at" as "a function word to indicate the goal of an indicated or implied action or motion").  Similarly, to discharge a firearm "in the direction of" a person also means to shoot toward that person's location.  *See id.* at 353 (defining "direction" as "the line or course on which something is moving or is aimed to move or along which something is pointing or

facing"); *see also id.* at 1322 (defining "toward" as "in the direction of"). Despite the interpretive canon that "each word, phrase, clause, and sentence should be given effect if reasonably possible," there is no meaningful difference in ordinary usage between discharging a firearm "at" a person and discharging it "in the direction of" a person. *Gilbert*, 429 S.W.3d at 22 (citing *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *State v. Hardy*, 963 S.W .2d 516, 520 (Tex. Crim. App. 1997)).

No. 12-13-00310-CR, 2014 WL 3845801, at *1 (Tex. App.—Tyler Aug. 6, 2014, no pet.).

With regard to the shooting, Flores-Leyja testified as follows:

Q.      Okay.  And while you were walking, what happened once you-guys started walking along the property?
A.      When we were walking, somebody started shooting.
Q.      Okay.  Before they started shooting, how far did you get before the shooting started?
A.      We must — we must have been like 200 feet from the truck to there, where they started spraying.
Q.      Okay.  Do you know where the gunshots were coming from?
A.      From the branches over there of the hill.
Q.      So you — you couldn't see who was shooting?
A.      No.  No, we didn't— we didn't see anyone.  They just started shooting.  And once the —they shot, he came out pointing at us, someone.
Q.      How many shots were fired?
A.      I don't know.  Eight, ten.  I don't remember.  I saw them all hit the dirt.
Q.      Where were the bullets hitting the dirt?
A.      In front of us.  But Pedro was ahead of me, that's why he got caught.
Q.      Okay.  So Pedro was leading you-guys while you were inspecting the property?
A.      Yes.  Like a — about 2 feet ahead.  Two feet, yeah.
Q.      Okay.  Did any of the bullets come near you?
A.      No, just close, real close, but none of them hit me.
Q.      When you say "real close," were they hitting the ground right in front of you?
A.      Yes, in front of me in the dirt, like this (demonstrating).
Q.      Were the shots being fired also in front of Arnulfo?  Could you see that?
A.      I — I remember that it was in front of Pedro and — myself because we were ahead, we were going ahead.

Flores-Leyja then testified that Flores came out from the branches pointing the automatic rifle at them and yelling at them not to move.[2]

---

[2] Gonzalez's testimony about the direction of the shooting was less clear:

Based on Flores-Leyja's testimony that multiple bullets were hitting the dirt directly in front of the three men, the jury could have found that Flores shot at or in the direction of the three men. Flores points to testimony from a deposition he gave in a civil lawsuit in which he stated he never shot toward Hernandez but shot to his side, and the bullet hit a rock.[3] The jury, however, was the sole judge of the credibility of Flores's testimony, and could have given his testimony no weight. Because the evidence is sufficient to support the jury's finding that Flores shot at or in the direction of Hernandez, Flores's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Jason Pulliam, Justice

DO NOT PUBLISH

---

Q.      And how many times did he shoot?
A.      Well, I cannot tell you approximately because — because he did round the rifle (indicating).
Q.      And you are indicating from the witness stand with your arm a sweeping motion?
A.      What was that you said?
Q.      You are indicating like a sweeping motion (indicating)?
A.      Yes. Yes, that's what he did, like this (indicating).
Q.      Okay. On — using your little light, can you indicate where that sweep went?
A.      In this area, there in that area, he was here and then he did this, like that (descriptive sound).

[3] Flores's defensive theory was that the area was rocky and overgrown with trees and brush, and the bullet ricocheted off of an object and struck Hernandez.