John Charles MENARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–01207–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 9, 2006.

---

**56**

Emily Munoz–Detoto, Houston, for appellant.

Jessica A. Mcdonald, Asst. Dist. Atty., Charles A. Rosenthal, Dist. Atty.-Harris County, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

A jury found appellant, John Charles Menard, guilty of aggravated robbery.[1] After finding two enhancement paragraphs true, the jury assessed punishment at thirty-six years' confinement. Menard contends the trial court abused its discretion in failing to excuse a juror during deliberations, depriving him of his (1) Fifth and Fourteenth Amendment rights to due process; (2) Sixth Amendment right to a trial by a fair and impartial jury; and (3) Texas constitutional rights to a fair and impartial jury and to due course of law. We hold that the issue is waived because Menard did not object to the service of the juror at the time the conduct about which he complains arose and he became aware of it; nor did he request a mistrial or file a motion for new trial. We therefore affirm.

### Facts

In November 2003, Bridget Martin worked as a retail clerk at a Mrs. Baird's Bakery located on North Shepherd in Houston, Texas. In the late afternoon, a young man and young woman entered the store and approached Martin. The man pointed a handgun in Martin's direction and ordered her to open the cash register. Martin complied and informed the man when the cash register was open. He then led Martin to the restroom where he told her to wait ten minutes before coming out. Upon later inspection, Martin determined that $65 was missing from the cash register. Martin identified Menard as the man

---

1. TEX. PEN.CODE ANN. § 29.03(a)(2) (Vernon 2003).

who robbed her, both during a photo spread and while in court.

## Relevant Proceedings

After the jury found Menard guilty, but before the beginning of the presentation of evidence at the punishment phase of trial, the trial court inquired outside the presence of the jury whether Menard would be pleading true or not true to the punishment enhancement paragraphs and whether his stipulation of evidence was voluntarily made. Menard stated that he would plead true to the enhancements and would stipulate to the prior convictions. Menard's counsel then informed the court that Menard believed that a juror had been sleeping during the guilt/innocence testimony and requested "[i]f we could, *after* the deliberations, bring him out, ask [the juror] about that." (Emphasis added.)

The trial court then brought the jury into the courtroom for the punishment phase of trial. Menard pleaded true to the enhancement paragraphs, the State introduced the stipulated evidence regarding his prior convictions, and the State rested. Menard testified on his own behalf as the sole defense witness. The court read the punishment charge to the jury, the attorneys each made closing arguments, and the jury again retired to deliberate. During their punishment deliberations, the jury requested a copy of the trial court's charge.

While the jury deliberated during the punishment phase of trial, Menard's counsel stated as follows:

During the punishment stage, Mr. Menard indicated to me that the juror in the corner, the older black gentleman, was sleeping. I noticed that myself. I asked Deputy Wheeler to keep an eye on him, and I noticed Deputy Wheeler was [watching him] the entire time that we were presenting evidence and during the argument. I'd like to present Deputy Wheeler's testimony in that regard for the record to—you know, to develop a possible point of appeal, that this individual did not listen to the evidence, at least during the punishment phase of the trial, and then, perhaps, after the verdict bring him out and question him with regard to what he heard during the guilt/innocence stage. Because the indication from Mr. Menard is that that same individual was sleeping during the guilt/innocence phase.

Menard's counsel then called Deputy Wheeler, the Harris County Sheriff's Deputy assigned as the bailiff during the punishment phase of Menard's trial. The deputy testified that when the State's attorney began her cross-examination of Menard during the punishment phase, Menard's trial counsel asked the deputy to watch the black gentleman in the far corner of the jury box. The deputy then watched the gentleman and noted as follows:

During Miss Kolski's cross-examination for four periods of eight seconds, two periods of ten seconds, one period of twelve seconds, and one period of thirteen seconds, that gentleman had his eyes closed. During that period when his eyes were opened, he rubbed them constantly and he was blinking frequently when he was—appeared to be alert. Then during the reading of the charge by the Court, on two occasions his eyes were closed for six seconds, on four occasions, they were closed for twelve seconds. He was, once again, rubbing his eyes. And on three occasions, when his eyes were closed, he was visible [sic] nodding off. In other words, his chin was dropping. Then during Miss Kolski's closing argument, there was one period of eight seconds when he had his chin in his hand and he was visibly

nodding off, and there were two instances of ten seconds when his eyes were closed. During your closing argument, there was one period of 12 seconds when his eyes were closed—were closed rather, two periods of eight seconds when his chin was in his hand and he was nodding off, two periods of eight seconds when his eyes were merely closed, two periods of 10 seconds when he was with his eyes closed and nodding off, and one period of thirteen seconds when his chin was in his hand and he was nodding off.

The attorneys then each made statements to the court regarding their observations about the juror. The State's attorney represented that she had never seen "this juror sleeping" and that every time that she looked at the jury "the entire jury looked alert and awake." The State's attorney stated that she did not see any of the things that Deputy Wheeler had described. Menard's trial attorney stated that he could not "state specifically on the record as to the times that Deputy Wheeler has logged on the record, but I can state emphatically that I saw this juror with his eyes closed on more than one occasion." Later in the discussion, Menard's trial attorney stated further that "I can say during my argument, and it might just be my effect on him, he was nodding off."

Menard's attorney requested that the trial court question the juror. In response, the trial court inquired if the attorneys wanted to agree to excuse the juror. Menard's trial attorney indicated that excusal of the juror would not necessarily be a satisfactory remedy if the juror had not "heard enough during the guilt/innocence stage that he participated with some degree of intellect during that process."[2] The trial court then removed the juror from the punishment deliberations and questioned the juror as follows:

THE COURT: Mr. Washington—

JUROR: Yes, sir.

THE COURT:—there are some people who are of the opinion that they felt like you might have been dozing a little bit.

JUROR: I did doze a couple of times. I did, but I was really apparent of what was going on.

THE COURT: Even though you dozed a few times, you felt like you were still able to hear what the evidence was coming from the witness stand at the time?

JUROR: Yes, sir.

. . . .

THE COURT: Well, do you think that it in the least bit impaired your ability to render a fair verdict in this trial?

JUROR: No, sir.

THE COURT: Do you think it will impair your ability at all to render a fair verdict at the punishment phase of trial?

JUROR: No, to be very honest.

2. The record shows as follows:
THE COURT: Y'all want to agree to excuse that juror?
MR. ONCKEN: Sir?
THE COURT: Do you want to agree to excuse the juror?
MR. ONCKEN: Well, I mean, that might not be, you know, a satisfactory remedy if, in fact, he was sleeping the same way. I can't say that I noticed during the trial. I know Mr. Menard had indicated that to me, but I didn't pay attention. . . . I'd like to present [his family] on the record to see what they saw during the guilt/innocence phase of the trial with regard to the same issue. . . . I think what we need to do is bring him out at this point and ask whether or not he, in fact, feels like he was conscious enough during the guilt/innocence phase of the trial to have participated on a verdict.

The trial court sent the juror back to the jury room to continue deliberations. After a short period, defense counsel told the trial court that he had consulted with his client and that they wanted to excuse the juror "by agreement." The trial court asked the State's attorney if she wished to excuse the juror by agreement and she said no. The trial court then stated, "Your motion to excuse the juror is denied." Menard's counsel did not move for a mistrial or move for a new trial.

## Discussion

Menard contends the trial court abused its discretion in refusing to excuse the juror during the punishment phase of the trial, thereby depriving him of his (1) Fifth Amendment right to due process; (2) Sixth Amendment right to a trial by a fair and impartial jury; (3) Fourteenth Amendment right to due process; (4) Texas Constitution Article One, Section Ten, right to a fair and impartial jury; (5) Texas Constitution Article One, Section Thirteen, right to due course of law; and (6) Texas Constitution Article One, Section Nineteen, right to due course of law.

### A. Preservation of Error

 To preserve an issue for appeal, a party must timely object, stating the specific legal basis. TEX.R.APP. P. 33.1(a)(1); *Rhoades v. State*, 934 S.W.2d 113, 121, 127 (Tex.Crim.App.1996). "To be timely, an objection must be raised at the earliest opportunity or as soon as the ground of objection becomes apparent." *Penry v. State*, 903 S.W.2d 715, 763 (Tex. Crim.App.1995). In the absence of a timely motion or objection, nothing is presented for appellate review. *Cooper v. State*, 500 S.W.2d 837, 841 (Tex.Crim.App.1973). In order to properly preserve an error regarding jury misconduct, a defendant must move for a mistrial or a new trial.

*See Thieleman v. State*, No. 1743–04, 187 S.W.3d 455, (Tex.Crim.App.2005) (noting that appellant raised point of error by asserting that trial court erred in refusing to grant motion for mistrial where uncontroverted evidence was that juror slept continuously throughout trial); *Trout v. State*, 702 S.W.2d 618, 620 (Tex.Crim.App. 1985) ("A motion for new trial is the proper course to be taken in preserving alleged jury misconduct error for appeal."); *Matthews v. State*, 803 S.W.2d 347, 350 (Tex. App.-Houston [14th Dist.] 1990, no pet.) (same).

### B. The Record in This Case

 The record shows that Menard's trial attorney stated that he had observed the juror with his eyes closed on more than one occasion and that the juror was "nodding off" during his closing argument. Menard's trial attorney, however, never brought the matter to the trial court's attention at the time that the events were transpiring. Menard asked the trial court to question the juror during the punishment phase jury deliberations to determine whether the juror had been attentive during the punishment phase of trial and requested that the juror be excused "by agreement." When the trial court denied the request, however, Menard's trial attorney did not object to the service of the juror or request that the trial court remove the juror. He thus did not timely present his objection for a trial court ruling. Moreover, Menard never requested a mistrial, nor did he file a motion for new trial. We hold that Menard's complaints about the alleged sleeping juror are waived because he did not object to the juror's participation in the trial when the grounds for objection became apparent at trial—nor did he move for a mistrial or pursue any claim of juror misconduct post-trial. *See Thieleman*, 187 S.W.3d at 456 – 58, (holding that appellant preserved er-

ror as to complaint of sleeping juror by counsel noting fact that juror slept and moving for mistrial); *Penry*, 903 S.W.2d at 715.

■■■ Even assuming that Menard preserved error by counsel's request to excuse the juror "by agreement," we do not find that the trial court abused its discretion in denying the request, based upon this record.

If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury. However, a court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror.

*United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir.2000) (citations omitted). The trial court should consider whether "the sleeping juror missed large portions of the trial or [whether] the portions missed were particularly critical." *Id.* (finding no abuse of discretion in refusing to excuse juror whom trial judge, Assistant United States Attorney, and defense counsel noticed sleeping on at least two occasions, because there was no evidence that juror missed large portions of trial or that portions missed were particularly critical, and because defense counsel failed to raise issue when he first noticed juror sleeping).

■■■ Here, although the juror admitted to "dozing a couple of times," he confirmed to the trial court that he heard the evidence, "was really apparent of what was going on," and was able to render a fair verdict. The trial judge, as trier of fact, was free to believe the juror's representations on this point. *See Zamora v. State*, 647 S.W.2d 90, 94 (Tex.App.-San Antonio 1983, no pet.) (holding that trial court was free to believe juror's testimony that he did not fall asleep and to disbelieve testimony of six other witnesses that juror did fall asleep during crucial testimony). Furthermore, the record does not indicate that the juror missed large portions of the trial—rather, Deputy Wheeler indicated that the juror sporadically closed his eyes for periods of six to thirteen seconds. *See Freitag*, 230 F.3d at 1023. Accordingly, even had Menard properly preserved this issue for appeal, we find no abuse of discretion by the trial court.[3]

---

**3.** We publish this opinion because many relevant authorities are unpublished. *See Lee v. State*, No. 01–03–00655–CR, 2004 WL 2903508, at *2–3 (Tex.App.-Houston [1st Dist.] Dec. 16, 2004, pet. ref'd) (not designated for publication) (holding that trial court did not abuse its discretion in failing to remove juror who repeatedly nodded off for five-second intervals because juror did not miss large portions of trial, portions missed were favorable to State rather than appellant, and appellant did not object to juror's continued service on jury); *James v. State*, No. 14–98–01083–CR, 2000 WL 123771, at *1 (Tex. App.-Houston [14th Dist.] Feb. 3, 2000, no pet.) (not designated for publication) ("Because appellant failed to file a motion for new trial asserting jury misconduct and to develop evidence on that contention at a hearing on the motion, this point of error [concerning a sleeping juror] presents nothing for our review. Further, appellant has not cited, nor have we found, any authority which would have required the trial judge to dismiss the sleeping juror, even had the record revealed that she was sleeping."); *Bell v. State*, No. 05–94–00070–CR, 1999 WL 167612, at *8 (Tex. App.-Dallas Mar.29, 1999, no pet.) (not designated for publication) (where appellant moved for mistrial after State rested its case-in-chief on ground that "a 'couple of jurors' " were sleeping during DNA testimony, holding that nothing was preserved for review because, "[b]y the time the State had rested its case, it was impossible to ascertain whether any juror had slept, if so, how many, and for what period of time, so as to determine what testimony, if any, had been missed"); *Burgess v. State*, No. 01–95–01335–CR, 1996 WL 741842, at *2 (Tex.App.-Houston [1st Dist.] Dec. 19, 1996, no pet.) (not designated for publication) (holding that trial court did not

### Conclusion

We hold that Menard did not properly preserve his jury misconduct issue for appeal because he neither timely objected at the trial, nor moved for a mistrial, nor moved for a new trial. We therefore affirm the judgment of the trial court.

abuse its discretion in denying appellant's motion for mistrial where juror testified that she "probably nodded off a couple of times, but ... wasn't [a]sleep [and m]ost of the time [merely] had [her] eyes closed").