Opinion issued February 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00739-CR &
01-09-00740-CR

———————————

Jose SantOs Lopez, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 178th District Court

Harris County, Texas



Trial Court Case No. 1135300 & 1135301

 



 

MEMORANDUM OPINION

          Appellant,
Jose Santos Lopez, pled guilty to aggravated assault of a family member with a
deadly weapon,[1]
trial court cause number 1135300, and violation of a protective order,[2] trial court cause number
1135301.[3]  A jury assessed appellant’s punishment at
twelve years’ confinement and five years’ confinement respectively, to run
concurrently.  In two points of error,
appellant argues that (1) the trial court erred in overruling his motion
for a mistrial after the discovery of juror misconduct and (2) the trial court
mistakenly entered a judgment in both cause numbers indicating that appellant
pled “not guilty” to the charges alleged in the indictments.  The State also argues that the aggravated
assault judgment, cause 1135300, should be reformed to reflect the trial
court’s affirmative finding of the use of a deadly weapon, namely a knife, and
the affirmative finding of family violence and to reflect that the offense is a
first degree felony.

          We modify
the judgments and affirm as modified.

Background

          Appellant
and the complainant, Maria Ceballos, had been married for twenty years.  On August 27, 2007, appellant became drunk
and argued with Ceballos because appellant had been told that Ceballos was
involved in a romantic relationship with another man.  Appellant threatened Ceballos with a knife,
bit her breast, and forced her to have sexual intercourse with him.  He was subsequently arrested for sexual
assault, and Ceballos was granted a protective order.

          On
September 30, 2007, appellant appeared at the place where Ceballos was staying
with her daughters at approximately 4:00 a.m.  Ceballos and her daughter both asked appellant
to leave, and he became angry, started yelling, and withdrew a knife.  He then began to beat Ceballos in the head
with the handle of the knife.  One of
Ceballos’s daughters called 911, and Ceballos and her son from a previous
relationship who lived nearby were finally able to subdue appellant.  Ceballos needed stitches and staples to close
the wounds to her head, face, and hand. 
Appellant was arrested and eventually charged with aggravated assault of
a family member and violation of a protective order.

          At
trial, appellant pled guilty on the record to both felonies.  A jury considered the issue of punishment and
assessed appellant’s punishment at twelve years’ confinement for the aggravated
assault conviction and five years’ confinement for the violation of a
protective order conviction, to run concurrently.

Juror Conduct

In his first point of error,
appellant argues that the trial court erred in overruling his motion for
mistrial upon the discovery of juror misconduct.  The State argues that appellant did not
preserve this argument because he failed to pursue less extreme remedies first and
that, even if it is preserved, the trial court did not abuse its discretion by
giving the jury a limiting instruction rather than granting the motion for a
mistrial.

A.
     Facts Concerning Juror Conduct

During a lunch break, Juror No. 34,
Lupita Contreras, told Deputy C. Johnson that she recognized someone in the
audience.  The trial court questioned
Deputy Johnson on the record, and Johnson testified that Contreras told him
that she thought she recognized someone in the courtroom as someone she had
gone to school with and believed he might be a witness for appellant.  Deputy Johnson also testified that Contreras
told him that she feared that there might be some kind of retaliation against
her or her family for her “sitting with [appellant’s] future in her
hands.”  Upon questioning by appellant’s
trial counsel, Deputy Johnson further testified that Contreras approached him
individually, separately from the other jurors, and that he had no personal
knowledge regarding what she might have said to the other jurors. 

The trial court identified a man it
believed to be the person Contreras had recognized as Alfredo Espinoza,
appellant’s brother in law.  The trial
court asked Espinoza to wait outside the courtroom and then questioned
Contreras.  Contreras first testified
that she had only asked Deputy Johnson a question, “What if someone that’s in
the audience is someone you went to school with and they recognize you; is that
a problem?”  She testified that she did
not say anything to Johnson about feeling intimidated.  After more questioning by the trial court,
Contreras also testified that she told Deputy Johnson that the person she
recognized made her “nervous.”  She
testified that she was nervous because “whatever we decide if he’s a family
member, I don’t know if it’s going to affect me, you know, out of the
courtroom,” but that she did not explain her thinking to Deputy Johnson.

The trial court then had Espinoza
step into the courtroom, and Contreras testified that he was not the man she
recognized.  She testified that the man
she recognized was approximately twenty-six years old, had a dark complexion,
and was wearing lime green.  The trial
court then asked Contreras to leave the courtroom and questioned Deputy Johnson
again.  Deputy Johnson then affirmed that
Contreras had told him that she felt intimidated and that appellant’s life was
in her hands.  The trial court attempted
to identify the man Contreras thought she recognized, but was unable to do so.

The trial court then questioned
Contreras further:

[Trial Court]:        Have you told any other jurors about
this issue?

 

[Contreras]:          I just asked a question.  I asked one of them: Hey, you know, if
somebody in the audience, if you went to high school with them, does it
matter?  And they just said: Oh, I don’t
know.  You would have to tell somebody
from the courtroom.  And that was it.

 

[Trial Court]:        I see.  Okay. 
That’s all you talked about?

[Contreras]:                    Yes.

 

[Trial
Court]:        You didn’t talk about this
person at all . . . with the other jurors?

 

[Contreras]:                    No, I didn’t.

 

The trial
court also questioned Contreras about whether she felt she was able to continue
as a “fair juror in this case and decide this case and not let that affect you?”  Contreras testified that she was able to
continue as a juror and was not concerned about anything that might happen
after the trial.

          At a bench conference, the trial court
and appellant’s attorney discussed their concern over Contreras’s “wishy-washy”
testimony regarding her apprehensions about the man she thought she recognized
and how she had phrased her question to Deputy Johnson and to the other
juror.  The trial court also questioned
the juror Contreras had spoken to, Aishe Rashiti.  Rashiti testified that Contreras told her
that she recognized someone in the courtroom, that he was wearing a green
shirt, and that she did not know if the man she recognized was appellant’s
son.  Rashiti told Contreras that the man
she recognized could be anybody because it was an open court, but she
encouraged Contreras to discuss her concern with the bailiff.  Rashiti testified that she and Contreras
carried on their conversation quietly and that Rashiti later told other jurors
that Contreras thought she recognized someone in the courtroom “and she’s
worried.”

          The trial court then ruled that
Rashiti was not tainted, that she had not tainted anyone else, and that
Contreras could be excused if the attorneys were concerned about her remaining
on the jury.  Appellant’s attorney
expressed some concern about taint of the jury panel, specifically,

My concern is if I agree to let [Contreras] go, then you’re going to have
a juror that’s gone from this panel and what they are left with is the
question: Hey, this girl knew somebody in the audience and she’s afraid of what
would happen if she goes to—renders punishment against him.  And so now she’s gone and they are going to
be wondering what the heck is going here.

 

The trial
court determined that it would question both Contreras and the remaining jurors
further and make any necessary explanation, and it stated that appellant’s
counsel could “decide later” if counsel agreed with removing Contreras.

The trial court asked Contreras the name of the man she thought she
recognized, but she did not know his name. 
The trial court explained to her that the man was not a witness or
related in any way to appellant.  The
trial court also addressed the entire jury, informing them of the events
regarding Contreras’s recognition of someone she thought she knew and her
conversations with Rashiti and Deputy Johnson. 
Rashiti reiterated that she had only mentioned to the other jurors that
Contreras “feels she knows somebody and she’s hoping it’s [sic] not related”
and that Rashiti herself thought the person probably was not related to
appellant, but was just someone attending an open court.  The trial court then asked the entire jury:

Members of the Jury, other than that have you heard any more from anyone
about this issue here that Ms. Contreras thinks she recognized somebody and she
says she does know them?  Anybody have
any more information other than what you’ve heard me tell you right now about
that issue?

 

The jurors
all responded by shaking their heads. 
The trial court also instructed the jury:

I’m instructing y’all that you base your verdicts on the fact[s], and the
law comes from here, and the jury charge and the fact testimony that you hear
under oath and the evidence admitted in this trial and nothing else.  Don’t concern yourself with people in the
audience.  Don’t speculate about
anything.  It has nothing to do with this
case, and don’t discuss this case at all. 
At all.  Any aspect of this case
at all until the trial is completely over with.

 

The trial court then discussed outside the presence of the jury whether
or not to release Contreras:

[Trial Court]:        [C]ounsel
for the State and defense, you agree to let Ms. Contreras go or not?

 

[State]:                 The
State has no issue with you letting [Contreras] go and seating the alternate
juror.

. . . .

 

[Appellant]:          Judge,
I don’t agree to let her go.  And I make
a motion for a mistrial based on the fact that I feel like the jury could
possibly be tainted.  I realized that
you’ve used all precautions that you can to make sure that you’re not, and I
understand it’s your position. . . . 

We don’t know if they are tainted and in the
abundance of caution we do know that this case was talked about, that this
Judge, your order [not to discuss the case] was violated by this jury and they
have at least one juror who said they feel like they might be intimidated . . .
.  I’m just afraid if I agree to let that
juror go, that I’m somehow waiving my motion for mistrial.  So I’m not going to excuse that juror.

 

The trial
court overruled appellant’s motion for mistrial and stated, “You preserve your
error.”  Appellant’s trial counsel then
stated, “As long as I’m preserved on my motion for new trial, I do agree to let
her go,” but he then subsequently asked if he could have the opportunity to
brief the court on the issue.

The trial court then decided that it would not dismiss Contreras at that
time but would take counsel’s various arguments under advisement for the
remainder of the trial.  The trial court
also finally admonished the jury once again that it did not know who the man
Contreras thought she knew was, but that it clearly was not anyone related to
appellant’s case in any way and that the jury should “disregard that issue
completely.  Don’t think about it.  Don’t talk about.”

B.      Analysis

          A mistrial
is appropriate only “in ‘extreme circumstances’ for a narrow class of highly
prejudicial and incurable errors” that are “so prejudicial that expenditure of
further time and expense would be wasteful and futile.”  Ocon v.
State, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004)).  Whether an
error requires a mistrial must be determined by the particular facts of the
case.  Id.  We review the trial
court’s denial of a mistrial for an abuse of discretion and uphold the ruling
if it was within the zone of reasonable disagreement.  Id.

The State argues that appellant
failed to preserve this argument because he moved for a mistrial without first
pursuing less extreme remedies.  To
preserve error caused by juror misconduct, the defendant must either move for a
mistrial or move for a new trial supported by affidavits of a juror or other
person in a position to know the facts alleging misconduct.  Menard
v. State, 193 S.W.3d 55, 59 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d).  The Court of Criminal Appeals
has stated that “a mistrial should be granted ‘only when residual prejudice
remains’ after less drastic alternatives have been explored.”  Ocon,
284 S.W.3d at 884–85 (quoting Barnett v.
State, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).  It also stated that “requesting lesser
remedies is not a prerequisite to a motion for mistrial” but that, when the
movant does not first request a lesser remedy, it will not reverse a trial
court’s judgment if a less drastic alternative could have cured the problem.  Id. at
885.

Here, the attorneys for both
appellant and the State requested, and the trial court carried out, less
drastic alternatives first, including questioning Contreras and Rashiti
individually and the jury as a whole, giving a limiting instruction, and
considering replacing Contreras with the alternate juror.  After appellant’s trial counsel made sure
that he could still assert his motion for mistrial, he also stated that he
would agree to Contreras’s removal from the jury.  The trial court ultimately decided not to
release Contreras from the jury and also denied appellant’s motion for
mistrial.  Thus, not only did appellant
preserve his complaint of juror misconduct by moving for a mistrial, he also
requested lesser remedies before he moved for a mistrial.  See
Ocon, 284 S.W.3d at 884–85; Menard,
193 S.W.3d at 59.

Appellant argues that Contreras’s
actions were “clearly improper” and “served to improperly influence the
jury.”  Appellant argues that the juror
misconduct in this case deprived appellant of his right to a fair and impartial
trial and his right to have his guilt or punishment determined without
reference to any outside influence.  See Garza v. State, 695 S.W.2d 58, 59
(Tex. App.—Corpus Christi 1985, no pet.) (holding that, to be entitled to new
trial, appellant must establish that jury was guilty of misconduct that
deprived him of fair and impartial trial); see
also Cortez v. State, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984) (holding
in context of improper jury argument that “an accused person is entitled to
have his guilt or punishment determined without reference to any outside
influence”). 

Assuming, without deciding, that
Contreras’s conduct in asking other jurors what she should do if she recognized
someone in the courtroom was misconduct, the facts of this case indicate that
it was not a “highly prejudicial or incurable” error justifying the extreme
remedy of a mistrial.  See Ocon, 284 S.W.3d at 884.  The trial court was never able to determine
exactly who it was Contreras thought she recognized, but there was no
indication that the man was involved with appellant’s case in any way.  None of the discussion about the man Contreras recognized related to any
witness or evidence presented at the punishment trial or to anything connected
with appellant in any way.  Furthermore,
the actions taken by the trial court were sufficient to cure any potential
harm.  The trial court questioned
both Contreras and Rashiti extensively, determined that the incident did not
taint the jury, and gave the jury a limiting instruction admonishing jurors to
ignore the issue.  Contreras indicated
that she could be a fair and impartial juror after the incident occurred, and,
according to the record, the remaining jurors actually heard very little about
the entire episode.  Nothing occurred later in the trial
to indicate that any of the jurors remained concerned about the incident or
that it had any influence on their deliberations.

We conclude that this conduct by
Contreras, Rashiti, and the other jurors did not deprive appellant of his right
to a fair and impartial trial or his right to have his punishment determined
without reference to any outside influence. 
The trial court did not abuse its discretion in denying the mistrial.  See id.

We overrule appellant’s first point
of error.

 

Judgments

In his second point of error,
appellant argues that the judgment in both cause numbers should be reformed to
reflect that he pled guilty to both offenses. 
The State argues that the judgment in cause number 1135300 for the
aggravated assault conviction should also be reformed to reflect the trial
court’s affirmative findings of use of a deadly weapon, namely a knife, and family
violence and to reflect that the offense was a first degree felony.

A.      Facts Concerning Entry of Judgment

At trial, on the record in open
court, the State read the indictments for both cause numbers.  On the charge in cause number 1135300, that
appellant “unlawfully, intentionally and knowingly cause[d] bodily injury to
Maria Ceballos, a member of the defendant’s family, . . . by using a deadly
weapon, namely a knife,” appellant pled, “Guilty.”  On the charge in cause number 1135301, that
appellant “violate[d] a protective order . . . by committing the offense of
assault of Maria Ceballos,” appellant again pled, “Guilty.”  The trial court then stated, “Defendant
having pled guilty to both indictments, we now proceed to the punishment phase
of this trial.”

After hearing all of the evidence
presented, the jury was instructed that appellant “entered a plea of guilty to
the offense of aggravated assault of a family member . . . by using a deadly
weapon, namely, a knife” and that appellant “entered a plea of guilty to the
offense of violation of a protective order.” 
The jury assessed appellant’s punishment at twelve years’ confinement
for the aggravated assault conviction and five years’ confinement for the
violation of a protective order conviction, to run concurrently.  The trial court then stated, “[T]he Court
makes an affirmative finding that a deadly weapon was used, [and] an affirmative
finding of family violence.”

The trial court’s judgments in both
causes, however, stated under “Plea to Offense” that appellant pled “Not
Guilty” and that the jury returned verdict of guilty.  Also, the trial court’s judgment in cause
number 1135300 stated that the “Degree of Offense” was a “2nd Degree Felony”
and indicated “N/A” under “Finding on Deadly Weapon.” 

B.      Analysis

          An
appellate court has the authority to reform a judgment to make the record speak
the truth when the matter has been called to its attention by any source.  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that
appellate court could reform judgment to reflect jury’s affirmative finding on
use of deadly weapon and adopting reasoning in Asberry v. State, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991,
pet. ref’d) (“The authority of an appellate court to reform incorrect judgments
is not dependant upon the request of any party, nor does it turn on the
question of whether a party has or has not objected in the trial court.”)); see also Rhoten v. State, 299 S.W.3d
349, 356 (Tex. App.—Texarkana 2009, no pet.) (reforming judgment to correctly
reflect appellant’s plea).  “The Texas Rules of Appellate Procedure also
provide direct authority for this Court to modify the trial court’s
judgment.”  Rhoten, 299 S.W.3d at 356 (citing Tex. R. App. P.
43.2(b) (providing that court of appeals may modify trial court’s judgment and
affirm as modified)).

          Here,
the record reflects that appellant clearly pled guilty in both cause
numbers.  Thus, we sustain appellant’s
second point of error and hold that the judgments in both cause numbers should
be modified to reflect that appellant pled guilty to both offenses and that
there was no jury verdict on guilt.

          The
State also argues that we should modify the judgments to reflect the trial
court’s affirmative findings and the correct degree of the offense.  See Tex. Code Crim. Proc. Ann. art. 42.01,
§ 1 (3), (14), (21) (Vernon Supp. 2010) (providing that judgment shall reflect,
among other things, plea of defendant, degree of offense for which defendant
was convicted, and affirmative findings).  Here, the trial court stated on the record its
affirmative findings that the aggravated assault involved a family member and
that appellant used a deadly weapon, namely a knife.  These findings were also supported by the
indictments and the jury charge.  Assault
of a family member with a deadly weapon is a first degree felony.  Tex.
Penal Code Ann. § 22.02(b)(1) (Vernon Supp. 2010); see also Tex. Fam. Code Ann.
§ 71.003 (Vernon 2008) (defining “family”).

          We
conclude that the judgment in cause number 1135300 should be modified to
reflect the affirmative findings of the trial court that the aggravated assault
involved a family member and that appellant used a deadly weapon, namely a
knife, and the fact that the offense is a first degree felony.




 

Conclusion

We modify the judgment in cause
number 1135300 to reflect that appellant pled guilty to aggravated assault of a
family member with a deadly weapon, that no jury verdict was rendered on the
issue of guilt, that the trial court made affirmative findings that appellant
used a deadly weapon, namely a knife, and that family violence was involved,
and that the offense was a first degree felony, not a second degree felony.  We modify the judgment in cause number
1135301 to reflect that appellant pled guilty to violation of a protective
order and that no jury verdict was rendered on the issue of guilt.  We affirm the judgments of the trial court as
modified.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.02
(Vernon Supp. 2010).

 





[2]           See
Tex. Penal Code Ann. § 25.07
(Vernon Supp. 2010).

 





[3]
          Trial court cause number 1135300
for aggravated assault of a family member with a deadly weapon resulted in
appeal number 01-09-00739-CR, and trial court cause number 1135301 for
violation of a protective order resulted in appeal number 01-09-00740-CR.