

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00487-CR

Dennis Lee **GIDDINGS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 9787
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Irene Rios, Justice
Lori I. Valenzuela, Justice
Velia J. Meza, Justice

Delivered and Filed: June 24, 2026

AFFIRMED

In three issues, appellant Dennis Lee Giddings challenges his conviction for driving while intoxicated, third offense or more. We overrule Giddings's appellate issues and affirm the judgment of conviction.

## BACKGROUND

On July 4, 2024, Giddings was involved in an automobile collision with a City of Boerne firetruck. Giddings maintained that the firetruck hit him, while the truck's driver testified that

Giddings entered his lane and collided with the back of the truck. The police officers who responded to the collision believed Giddings was intoxicated, and they arrested him. A Kendall County grand jury indicted him for driving while intoxicated, third or more.

After hearing the evidence presented at trial, the jury found Giddings guilty as charged. The jury also found the State's allegations that Giddings had two prior felony convictions to be true, and it assessed his punishment at 50 years' confinement. The trial court subsequently signed a judgment of conviction that was consistent with the jury's verdict. Giddings now appeals.

## ANALYSIS

### *Alleged Discovery Violation*

In his first issue, Giddings argues the State violated its discovery obligations regarding testimony from Matthew Gregory, the firefighter and EMT who was driving the firetruck and who tried to assess Giddings at the scene. Giddings contends that the State had an obligation to disclose that Gregory's trial testimony would include details not recited in his written EMT report.

### *Standard of Review and Applicable Law*

We review a trial court's rulings on pretrial discovery matters and its evidentiary rulings under an abuse of discretion standard. *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024); *Sopko v. State*, 637 S.W.3d 252, 256 (Tex. App.—Fort Worth 2021, no pet.). A trial court does not abuse its discretion if its ruling is within the zone of reasonable disagreement. *Heath*, 696 S.W.3d at 688–89. Under this standard, we may not substitute our judgment for the trial court's. *Id.* at 689.

Article 39.14 of the Texas Code of Criminal Procedure, also known as the Michael Morton Act, provides:

> as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and

photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

TEX. CODE CRIM. PROC. art. 39.14(a). As used in Article 39.14, material "means having a logical connection to a consequential fact and is synonymous with relevant[.]" *Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021) (internal quotation marks omitted). Article 39.14 thus grants criminal defendants "a general statutory right to discovery . . . beyond the guarantees of due process." *Id.* at 291.

*Application*

On appeal, Giddings argues the State violated its discovery obligations under the Fifth and Fourteenth Amendments of the United States Constitution, *Brady v. Maryland*,[1] and Article 39.14. At trial, however, Giddings asserted only an Article 39.14 objection to Gregory's testimony. He therefore did not preserve his Fifth and Fourteenth Amendment or *Brady* complaints for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Keeter v. State*, 175 S.W.3d 756, 761 (Tex. Crim. App. 2005).

In his Article 39.14 complaints, Giddings does not argue that the State failed to disclose Gregory's written report or his identity as a testifying witness. Rather, he complains that Gregory testified to details not contained in the written report the State disclosed to Giddings.

Gregory testified without objection that after the collision, he noticed that Giddings's vehicle came to rest "a substantial distance," which he estimated to be 1,180 feet, away from the

---

[1] 373 U.S. 83 (1963).

firetruck and the collision site. He explained that the distance between the two vehicles led him to believe "[t]hat there was a high rate of speed involved from [Giddings's] vehicle to have slid that far or there was just complete lack of control of the vehicle." He further testified that as he was trying to assess Giddings's physical condition after the collision, Giddings swore at him, ignored his instructions to stay seated until further assistance arrived, and "swatted [his hand] away" when he tried to help Giddings out of his crashed vehicle. Gregory also testified that he noticed "a strong smell of alcohol coming from the vehicle."

At that point, Giddings objected to Gregory's testimony:

> Objection, Your Honor. We have a report in this case. We don't have any information related to the testimony that's there now. . . . It's a Michael Morton violation. We don't have any evidence related to this.

Giddings confirmed that his objection was limited to the testimony described above and Gregory's statements that he estimated Giddings's vehicle came to rest approximately 1,180 feet past the collision site.

During a conference outside the jury's presence, the State initially represented, "The majority of the testimony that's coming out are things that I'm hearing for the first time." Giddings responded, "[W]e are of the position that [the State] knew what the answers to these questions were, knew that that was going to be part of this. They surely rehearsed that. And none of that information was made available to us before this moment."

As the conference continued, the State read portions of Gregory's report into the record:

> It took a minute to get down to the other vehicle involved. Once there I found a 50- to 60-year-old male sitting in his car. I had introduced myself and asked if he was okay or if he was hurt. His immediate response was to begin cursing me out and accusing me of hitting him. I again asked him if he was okay or if he was hurt. He again responded with profanity and accusing me of swerving into his lane and hitting him. I advised him law enforcement would determine who's at fault and that all I cared about was that he was okay. I persisted to inquire if he was hurt with no

success. During this exchange, I could smell a very strong odor of alcohol coming from the vehicle.

After the State read Gregory's report into the record, the trial court then overruled Giddings's Article 39.14 objection, the jury returned to the courtroom, and Gregory continued with his testimony.

The colloquy described above shows that Gregory's written report included his recollections about Giddings's demeanor and the smell of alcohol. As a result, the trial court did not act outside the zone of reasonable disagreement by concluding the State satisfied any obligation it owed to disclose those portions of Gregory's testimony. *See Ferrer v. State*, 548 S.W.3d 115, 121 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

The portion of Gregory's report that the State read into the record did not include Gregory's estimate of the distance between the two vehicles or his testimony about Giddings refusing his offer of assistance. We will assume without deciding that those details constituted "material" evidence. *See* TEX. CODE CRIM. PROC. art. 39.14(a); *Watkins*, 619 S.W.3d at 290. We note, however, that our sister court in Eastland recently rejected an Article 39.14 argument like the one Giddings presents here. *See generally Humphries v. State*, Nos. 11-22-00271-CR & 11-22-00272-CR, 2024 WL 3528959 (Tex. App.—Eastland July 25, 2024, no pet.) (mem. op., not designated for publication).

In *Humphries*, the appellant was charged with burglary of a habitation with intent to commit aggravated assault. *Id.* at *1. The State alleged that he entered a home while its occupants slept "with 'the intention to hurt'" one of the occupants, John. *Id.* at *1–2. The appellant entered an open plea of guilty to a lesser-included offense, and the trial court accepted the plea pending the presentation of evidence. *Id.* at *1.

During the presentation of evidence, John testified that he saw the appellant in the home and heard a noise like "the sound of a 'gun jamming'" that made him believe the appellant was carrying a firearm. *Id.* at *2. John's parents, Wylie and Telise, testified that John woke them and told them, "'[t]here's somebody in the house with a gun.'" *Id.* at *3. A deputy testified that John, Wylie, and Telise "had told him 'about seeing the subject with the gun.'" *Id.* at *2. However, a police investigator testified that his written narrative "did not include the statements from Wylie and Telise about John hearing a firearm jamming or communicating to each other that there was an intruder with a gun." *Id.* at *3. After hearing this testimony, "[a]ppellant's trial attorney suggested that he was not informed that John told Wylie and Telise that there was a person with a gun in the house," and the trial court *sua sponte* "inquired about any potential Article 39.14 issues." *Id.* "The State responded that the information from John was disclosed to Appellant before his open plea, but the information from Wylie and Telise was not known by the State prior to their testimony." *Id.*

The trial court ultimately "determined that the State had violated its discovery obligation as to the testimony of John," and it excluded his statement. *Id.* However, it also "stated that it would not exclude Wylie's and Telise's testimony because it had no evidence that the State was aware of the additional information prior to their testimony." *Id.* The court of appeals held the trial court did not abuse its discretion because "the State does not have an obligation to disclose information that it was never provided." *Id.* at *7.

Here, Giddings argues that Gregory's testimony included "facts and information outside his written report from the night." At trial, he argued that the State must have known that Gregory's testimony would go outside the details included in his written report because "You're asking the questions. You must know the answers." But the record does not contain any evidence that the

State knew Gregory planned to testify about the distance between the two vehicles or that Giddings swatted his hand away when he offered assistance. To the contrary, the State affirmatively represented below that it, like Giddings, was hearing those details "for the first time." Under these circumstances, the trial court did not abuse its discretion by overruling Giddings's Article 39.14 objection. *See id.* at *5 (concluding admission of Wylie's and Telise's testimony was "not offensive to the State's responsibilities under Article 39.14 and therefore cannot stand as error that denied Appellant any right to which he was legally entitled").

But even if we assume the trial court erred, that error was harmless. A violation of Article 39.14 is non-constitutional error that will only support reversal if it "had a substantial and injurious effect or influence in determining the jury's verdict." *Fortuna v. State*, 665 S.W.3d 861, 869 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *see also* TEX. R. APP. P. 44.2(b). "If we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Fortuna*, 665 S.W.3d at 869. "In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the error." *Id.*

Here, Gregory's testimony about the post-collision distance between the firetruck and Giddings's vehicle was corroborated by Trooper Robert Pennington, who testified that he personally observed both vehicles' positions at the scene. Like Gregory, he explained why the distance stood out to him:

> The firetruck remained relatively close to the area of impact, which indicated to me a normal reaction. They experienced the impact and brought the vehicle to a stop. And the red sedan [Giddings's vehicle] was a significant distance away from [*sic*] further down continuing in the direction it was coming from the point of impact,

which told me there was either a delayed response to the impact or a failed response to the impact, that the vehicle was not intended to stop.

And, like Gregory, Pennington testified that he "observed the odor of alcohol emitting from [Giddings's] person." He further testified that Giddings was "agitated," "[h]is speech was somewhat inappropriate," and his "behavior seemed altered compared to the vast majority of people [Pennington had] interacted with." Similarly, Deputy Daniel Zimardo testified that he could "smell the odor of alcohol on" Giddings, his movements were uncoordinated, and he was "evasive," "uncooperative," and "antagonistic" with the investigating officers. Finally, both Pennington and Zimardo testified that Giddings's speech was slurred and he was using his car to support his weight when they spoke to him.

Pennington's and Zimardo's unobjected-to testimony about what they personally observed at the collision site was cumulative of the challenged portions of Gregory's testimony. *See Mabry v. State*, No. 05-23-00531-CR, 2025 WL 1128802, at *2–3 (Tex. App.—Dallas Apr. 16, 2025, pet. ref'd) (mem. op., not designated for publication) (holding Article 39.14 error was harmless where challenged evidence was cumulative of other properly admitted evidence). Accordingly, we cannot say that any error in the admission of Gregory's testimony "had more than a slight effect in the jury's determination of the case." *See Fortuna*, 665 S.W.3d at 869–70. We overrule Giddings's first issue.

### *Juror Misconduct*

In his second and third issues, Giddings argues that the trial court erred by denying his motions for a mistrial stemming from two alleged instances of juror misconduct. During the guilt/innocence phase of trial, Giddings requested a mistrial because one juror accused another of violating the trial court's instructions. Giddings again requested a mistrial during the punishment phase of trial on grounds that a juror slept during the presentation of evidence.

*Standard of Review*

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Id.* We review the evidence "in the light most favorable to the trial court's ruling, considering only those arguments before the trial court at the time of the ruling." *Thomas v. State*, 336 S.W.3d 703, 715 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). "The ruling must be upheld if it was within the zone of reasonable disagreement." *Ocon*, 284 S.W.3d at 884.

"Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Id.* at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). Less drastic alternatives can include, *inter alia*, "[q]uestioning jurors who allegedly participated in misconduct[.]" *Id.* at 886. "Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative." *Id.* at 885. "An appellant has the burden of proving an allegation of juror misconduct." *Thomas*, 336 S.W.3d at 715.

*Juror's Violation of Trial Court Instructions*

In his second issue, Giddings argues the trial court should have granted a mistrial after one juror claimed another juror violated the trial court's instructions by sharing his personal experiences with her. The instruction at issue stated:

> <u>Do not</u> tell other jurors your own personal experiences or those of other persons, nor relate any special information. A juror may have special knowledge of matters such as business, technical or professional matters or he may have expert knowledge or opinions, or he may know what happened in this or some other lawsuit. To tell the other jurors any of this information is a violation of these instructions.

As Giddings notes on appeal, the Texas Code of Criminal Procedures provides, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. art. 36.22. However, even in the presence of or with permission from the trial court, the Texas Rules of Evidence limit the evidence a trial court may receive from a juror:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

TEX. R. EVID. 606(b)(1). One exception to this general rule is that "[a] juror may testify: (A) about whether an outside influence was improperly brought to bear on any juror[.]" *Id.* R. 606(b)(2). "The plain language of the Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror." *White v. State*, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007). "The rule prevents a juror from testifying that the jury discussed improper matters *during deliberation.*" *McQuarrie v. State*, 380 S.W.3d 145, 151 (Tex. Crim. App. 2012) (emphasis in original).

Here, a juror believed that one of her fellow jurors violated the trial court's instructions by "talking about his job" and telling her that "[h]e was a nurse for 30 years." The record does not reflect that the fellow juror offered any special knowledge or personal experiences beyond describing his job.

The juror first reported her concerns to Dee Bohnert, an employee of the Kendall County Clerk's Office, and Susan Jackson, the Kendall County District Clerk, who in turn notified the trial court. After hearing testimony from Bohnert and Jackson, the trial court questioned the reporting juror in chambers to determine "whether an outside influence was improperly brought to bear on"

her. TEX. R. EVID. 606(b)(2). The juror told the trial court that her concerns did not arise from "any outside information. It was all just inside the jury room things that were said . . . to just me."

Based on the juror's statements and limited by what information a trial court may receive from a juror, the court concluded that what the juror described did not amount to an "outside influence," and it denied Giddings's motion for mistrial. Under the plain language of Rule 606(b), it did not abuse its discretion by doing so. TEX. R. EVID. 606(b); *McQuarrie*, 380 S.W.3d at 150–55 (describing what constitutes an outside influence); *White*, 225 S.W.3d at 574; *see also Ocon*, 284 S.W.3d at 884. We overrule Giddings's second issue.

*Sleeping Juror*

In his third issue, Giddings argues the trial court should have granted a mistrial because one of the jurors fell asleep during the punishment phase of trial. "'If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury. However, a court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror.'" *Menard v. State*, 193 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). "The trial court should consider whether 'the sleeping juror missed large portions of the trial or [whether] the portions missed were particularly critical.'" *Id.* (alteration in original).

Giddings's counsel told the trial court that the juror in question "was sleeping during some of the testimony" and "didn't even look at [the exhibits], he just passed them on to the next juror." These uncontradicted statements of counsel are some evidence to support a conclusion that these events occurred. *See Thieleman v. State*, 187 S.W.3d 455, 456–57 (Tex. Crim. App. 2005). However, Giddings has never specified, either below or in this court, how long the juror slept, how

much evidence he missed, or whether that evidence was "particularly critical." *See Menard*, 193 S.W.3d at 60. As a result, he did not establish that the juror's sleep made it impossible for him to perform his duties or otherwise denied Giddings a fair trial. *See id.* The trial court therefore did not abuse its discretion by denying a mistrial on this point. *See id.*; *Thieleman v. State*, No. 02-03-00141-CR, 2006 WL 744282, at *3 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op., not designated for publication) (considering a sleeping juror claim on remand from the Court of Criminal Appeals). We overrule Giddings's third issue.

## CONCLUSION

Having overruled each of Giddings's appellate issues, we affirm the judgment of conviction.

Lori I. Valenzuela, Justice

DO NOT PUBLISH